```
 1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3    United States of America,

 4                     Plaintiff,

 5    -v-                                Case No. 19-20220

 6    Anthony Vespa,

 7                     Defendant.
      _____/
 8
                             PLEA HEARING
 9
               BEFORE THE HONORABLE DAVID M. LAWSON
10                   United States District Judge
              Theodore Levin United States Courthouse
11                 231 West Lafayette Boulevard
                         Detroit, Michigan
12                       August 6, 2019

13    APPEARANCES:

14    FOR THE PLAINTIFF:    KAREN REYNOLDS
                            ADRIANA DYDELL
15                          United States Attorney's Office
                            211 West Fort Street, Suite 2001
16                          Detroit, Michigan  48226

17

18    FOR THE DEFENDANT:    STEVEN FISHMAN
                            615 Griswold Street, Suite 1125
19                          Detroit, Michigan

20

21

22

23

24            To Obtain a Certified Transcript Contact:
               Rene L. Twedt, CSR-2907, RDR, CRR, CRC
25                     www.transcriptorders.com
```

Plea Hearing - August 6, 2019

2

```
 1                    TABLE OF CONTENTS

 2   MATTER                                              PAGE

 3   PLEA HEARING.............................................   3

 4   CERTIFICATE OF COURT REPORTER...........................  34

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    Detroit, Michigan

2    August 6, 2019

3    4:08 p.m.

4                              *       *       *

5             THE CLERK:  All rise.  The United States District

6    Court for the Eastern District of Michigan is now in session,

7    the Honorable David M. Lawson presiding.

8             THE COURT:  You may be seated.

9             THE CLERK:  Now calling the case of 19-20220,

10   United States of America versus Anthony Vespa.

11            THE COURT:  Good afternoon, Counsel.  Would you put

12   your appearances on the record, please?

13            MS. REYNOLDS:  Good afternoon, your Honor.  Karen

14   Reynolds on behalf of the Government.  And Eric Newburg from

15   the FBI is to my left.

16            MS. DYDELL:  Good afternoon, your Honor.  Adriana

17   Dydell also on behalf of the United States.

18            MR. FISHMAN:  Good afternoon, Judge.  Steve Fishman

19   on behalf of Mr. Vespa, who is here with me in court and ready

20   to proceed with his plea.

21            THE COURT:  All right.  Good afternoon, Mr. Vespa.

22            THE DEFENDANT:  Good afternoon, sir.

23            THE COURT:  Stand when you address the Court.

24            You're charged in a single-count information with

25   wire fraud, and I understand you wish to resolve that case

Plea Hearing - August 6, 2019

4

```
 1     against you by entering a guilty plea under a plea agreement
 2     with the Government; is that correct, sir?
 3                THE DEFENDANT:  Yes, your Honor.
 4                THE COURT:  All right.  I'm going to ask you some
 5     questions.  If you do not understand a question, don't try
 6     to answer it.  Tell me you don't understand and I'll try to
 7     clarify it for you.  All right?
 8                THE DEFENDANT:  Yes, sir.
 9                THE COURT:  If at any time during the proceedings you
10     wish to consult with Mr. Fishman for any reason just tell me
11     and we'll stop and give you a chance to do that.
12                Do you understand?
13                THE DEFENDANT:  Yes.
14                THE COURT:  Would you state your full name for the
15     record?
16                THE DEFENDANT:  Anthony Luciano Vespa.
17                THE COURT:  Mr. Vespa, I intend to question you about
18     the facts of the crime alleged by the Government.
19                Do you understand that you have a constitutional
20     right to remain silent and not incriminate yourself?
21                THE DEFENDANT:  Yes.
22                THE COURT:  Do you wish to waive that right so you
23     can answer my questions today?
24                THE DEFENDANT:  Yes.
25                THE COURT:  How old are you?
```

Plea Hearing - August 6, 2019

5

1           THE DEFENDANT:  I'm 54.  I will be 55 on August 10.

2           THE COURT:  And how far did you go in school?

3           THE DEFENDANT:  Graduate school.  I went through law

4  school.

5           THE COURT:  All right.  Do you read, write, and

6  understand the English language?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Have you ever been treated for a mental

9  illness or addiction to narcotic drugs of any kind?

10          THE DEFENDANT:  No.

11          THE COURT:  Are you presently under the influence of

12  any drug, medication, or alcoholic beverage of any kind?

13          THE DEFENDANT:  No.

14          THE COURT:  I find that Mr. Vespa is an adult and

15  competent to plead.

16          Do you understand that you have the right to have an

17  attorney represent you during all stages of the proceedings

18  and if you cannot afford a lawyer of your own choice I will

19  appoint one for you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did you and Mr. Fishman receive a copy of

22  the information, which is the document that contains the

23  charge against you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Did he explain to you the elements of the

1    crime?

2            THE DEFENDANT:  He did.

3            THE COURT:  Did he review with you the evidence the

4    Government would be able to produce at trial if you chose to

5    go to trial?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And did he explain how that evidence

8    would satisfy the elements of the crime?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Have you considered and consulted with

11   him about your options; that is, the relative advantages of

12   pleading guilty versus going to trial?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Have you decided it is in your best

15   interest to give up your right to trial and plead guilty

16   instead?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Are you satisfied with the advice and the

19   services that Mr. Fishman has rendered on your behalf through

20   today?

21           THE DEFENDANT:  Absolutely.

22           THE COURT:  Now, I have a document here called

23   Rule 11 Plea Agreement, which appears to have been signed by

24   you on page 14 today.

25           Did you, in fact, sign that agreement today?

Plea Hearing - August 6, 2019

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Did you read it before you

3     signed it?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  I'm going to ask -- I guess Ms. Reynolds;

6     right?

7          MS. REYNOLDS:  That's correct, your Honor.

8          THE COURT:  I'm going to ask Ms. Reynolds to

9     summarize the terms of the plea agreement on the record out

10    loud.  I do that so we can all hear what they are.  But then

11    another reason is, when she is finished I'm going to ask if

12    anyone has made any other promises to you and which you're

13    relying on in making your decision to plead guilty, because I

14    want to make sure that any aspect of any representations are

15    contained in the document.

16          Do you understand?

17          THE DEFENDANT:  Yes.

18          THE COURT:  So if you will listen carefully.

19          Ms. Reynolds, please.

20          MS. REYNOLDS:  Thank you.

21          Your Honor, the Defendant is agreeing to plead to the

22    count that's contained in the information that the Court has

23    just referred to.

24          The maximum penalty for this offense is 20 years.

25    The maximum possible fine is $250,000.  That's on the first

1   page of the agreement.

2          He is pleading guilty to Count 1.

3          THE COURT:  You know what, there is no summary of the

4   supervised release terms on the front page either, which there

5   usually is.  Is it three years?

6          MS. REYNOLDS:  Oh, I typically do put that on there.

7   I'm sorry.

8          Yes, it is three years, your Honor.

9          THE COURT:  At least one and up to three?

10         MS. REYNOLDS:  Yes.  That's correct.

11         THE COURT:  All right.

12         MS. REYNOLDS:  Sorry about that.

13         Your Honor, the elements of the offense are on page 2

14  and they have been reviewed by the Defendant and by his

15  attorney, as has the factual basis for the plea agreement,

16  which the Defendant is prepared to speak to in his allocution.

17  That's on pages 2 and 3.

18         Your Honor, on page 4 there is a discussion of the

19  sentencing guidelines.  Mr. Fishman and I have spent -- and

20  Ms. Dydell have spent quite a bit of time going through the

21  calculations for this plea and the Defendant has agreed that

22  the Government's position is that the sentencing guideline

23  range will be within the fraud loss of more than $3,500,000

24  and less than $9,500,000, but the Defendant has reserved his

25  right to argue that the fraud loss is less.  And I'll discuss

Plea Hearing - August 6, 2019

1    that in just a moment as I continue through the Rule 11

2    Agreement.

3              Your Honor, if the Court accepts this Rule 11

4    Agreement the Government's recommendation is that the

5    guideline range be 51 to 63 months and the Defendant has

6    calculated the guidelines at less than that.

7              THE COURT:  That's all contingent on the loss amount?

8              MS. REYNOLDS:  That's correct.  The loss amount.

9    And we are prepared to have what I don't think will be an

10   extensive hearing, but we will brief it in sentencing memos

11   and then be happy to discuss it at sentencing.  But the

12   Defendant believes that the fraud loss should be between

13   $500,000 and $1.5 million for a sentencing guideline range of

14   33 to 41.

15             The Defendant does understand, pursuant to agreement,

16   though, that it is the top of the Government's guidelines

17   that will cap the sentence if the Court accepts the Rule 11

18   Agreement and the Government's calculations.

19             THE COURT:  And is the loss amount the only aspect of

20   the offense level that would be in dispute?

21             MS. REYNOLDS:  That's correct, your Honor.

22             THE COURT:  Okay.

23             MS. REYNOLDS:  Your Honor, so those are the

24   sentencing guidelines.  We have attached worksheets to the

25   Rule 11 Agreement that encompass the guidelines the Government

Plea Hearing - August 6, 2019

1   believes apply, and with the exception of the fraud loss, I

2   believe the Defendant would agree with those also.

3            There is a special assessment the Defendant must pay

4   at or before the time of sentence of $100.

5            The maximum possible fine will be no more than

6   $200,000 if the Court imposes a fine.

7            The Defendant has agreed to restitution in this case,

8   but that would depend on how the Court decides to calculate

9   the fraud loss.

10           Your Honor, with the Court's permission for the next

11  section of the Rule 11 Agreement, I'm going to ask Ms. Dydell

12  to explain to the Court what the forfeiture agreement is.

13           THE COURT:  All right.  That's fine.

14           Ms. Dydell, please.

15           MS. DYDELL:  Thank you, your Honor.  As part of the

16  agreement the Defendant has also agreed to the entry of a

17  forfeiture money judgment for -- in an amount to be determined

18  by the Court at sentencing.  Again, this will be contingent

19  upon the loss amount that the Court determines at sentencing.

20  But the parties have agreed to enter a general preliminary

21  order of forfeiture for a forfeiture money judgment.

22           THE COURT:  General, meaning not --

23           MS. DYDELL:  In an amount to be determined --

24           THE COURT:  Don't talk over me.

25           MS. DYDELL:  I apologize, your Honor.

Plea Hearing - August 6, 2019

```
1              THE COURT:  General, meaning that there is no
2    specific amount to be mentioned?
3              MS. DYDELL:  Not at this time.  At sentencing, we
4    will submit an amended preliminary order of forfeiture to
5    amend the amount of the money judgment.
6              THE COURT:  And when do you intend to submit the
7    first one?
8              MS. DYDELL:  The first one will be submitted -- I
9    have already circulated it to Mr. Fishman for review and so I
10   intend to submit it to the Court within the next week after
11   the Rule 11 Plea Agreement.
12             THE COURT:  All right.  Is that it?
13             MS. DYDELL:  Yes.  That's all, your Honor.
14             THE COURT:  Oh, okay.  I was thinking you were going
15   to -- this is a pretty extensive provision in the plea
16   agreement.  I thought you would summarize it more.  But if you
17   think that's adequate, that's fine with me.
18             MS. REYNOLDS:  Your Honor, and continuing on to
19   page 10 of the Rule 11 Agreement, paragraph 4 discusses each
20   party's right to withdraw from this agreement.  As we have
21   indicated before, the top of the guideline range is calculated
22   by the Government and are summarized in paragraph 2B, which
23   is 63 months.  If the Court doesn't go over 63 months, the
24   Defendant has no grounds to withdraw from the agreement.
25             If the -- the Government may elect to withdraw if the
```

Plea Hearing - August 6, 2019

```
1    Court goes below the bottom of the Government's calculation.
2            THE COURT:  Wait a minute.  Oh, you mean if I
3    calculate the guidelines differently?
4            MS. REYNOLDS:  Yes.  Yes.
5            THE COURT:  Okay.  All right.
6            MS. REYNOLDS:  Your Honor, there is a waiver of
7    appeal that is on page 10.  And for the record, I took word
8    for word your waiver of appeal and included it in here.
9            THE COURT:  You know, I can cover that with the
10   Defendant.
11           MS. REYNOLDS:  Yes.  And I figured that you would.
12           There is also a section on collateral consequences of
13   the conviction, and they include things like his right to
14   vote, to carry a firearm, serve on a jury, but I am sure the
15   Court will go over all of that.  And the Defendant has gone
16   through this with his attorney.
17           So, your Honor, this plea agreement was negotiated
18   robustly by both parties and was timely executed and accepted
19   by both parties.
20           THE COURT:  Well, not according to the plea agreement.
21           MS. REYNOLDS:  According to the plea agreement.
22           THE COURT:  No, I say, it was not -- not according to
23   the plea agreement, was it timely executed.  It says the offer
24   was withdrawn at 5:00 on March 25th.
25           MS. REYNOLDS:  I know.  I saw that.  I am sorry.
```

Plea Hearing - August 6, 2019

1          THE COURT:  I presume that you're waiving that.

2          MS. REYNOLDS:  When I say that -- yes.  When I say

3     that, I mean it was timely accepted and executed pursuant to

4     the discussions that we had.  And some of those discussions

5     continued until -- well, a couple days ago.

6          But we are satisfied that it was timely accepted,

7     your Honor.

8          THE COURT:  All right.

9          MS. REYNOLDS:  And I believe those are the most

10    important parts.

11         THE COURT:  And that provision in paragraph 11 of

12    the plea agreement, then, I take it, is of no consequence?

13         MS. REYNOLDS:  It is of no consequence.

14         THE COURT:  Anything else, Ms. Reynolds?

15         MS. REYNOLDS:  No, your Honor.  Thank you,

16    Mr. Fishman.

17         Do you have anything to add to that?

18         MR. FISHMAN:  I don't think so.  Other than one thing

19    which we will contain in the preliminary order of forfeiture.

20    We anticipate there will be money that's repaid between now

21    and the sentencing date.  And that money, the order might be

22    the same, but the Court will be apprised as to how much money

23    has been paid back.

24         THE COURT:  Oh, I see.  And whatever the restitution

25    amount ordered, there would be a credit against that; is that

Plea Hearing - August 6, 2019

1    what you're anticipating?

2              MR. FISHMAN:  Precisely.

3              MS. DYDELL:  Credited against both the restitution

4    amount and the amount of the forfeiture money judgment.

5              THE COURT:  All right.  Thank you.

6              Do you understand all that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  All right.  I would like to emphasize a

9    couple of points.  There is a reference in the plea agreement

10   to the sentencing guideline range, and I presume you and

11   Mr. Fishman have gone over it thoroughly and he has explained

12   to you how that's calculated.  Is that fair for me to conclude?

13             THE DEFENDANT:  Yes.

14             THE COURT:  All right.  The guideline range serves

15   two purposes in this case.  The first purpose is to calculate

16   a top end of the guideline range to basically cap off your

17   sentencing exposure.

18             Do you understand what I mean by that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  And that is anticipated to be

21   63 months, I believe.

22             MS. REYNOLDS:  That's correct, your Honor.

23             THE COURT:  Is that what you understand it to be,

24   Mr. Vespa?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  If you take a look at page 5, I think you
2     will find it there.
3          THE DEFENDANT:  Yes.
4          THE COURT:  All right.  And that means that if I
5     believe that I must sentence you for this crime to a prison
6     term longer than 63 months, you would have a right to withdraw
7     your guilty plea and proceed to trial on the information.
8          Do you understand that?
9          THE DEFENDANT:  Yes, sir.
10          THE COURT:  All right.  You would not have a right to
11     withdraw your guilty plea for any other reason, though.
12          Do you understand that?
13          THE DEFENDANT:  Yes.
14          THE COURT:  The guideline range serves another
15     purpose, and that is that if I -- I must consider the
16     guideline range together with several other factors in
17     determining what your actual sentence is.  Now, the guideline
18     range that I consider is the one that I calculate myself.
19     Many times that calculation will mirror what the lawyers have
20     come up with, but I don't do that until after the Probation
21     Department conducts a presentence investigation and produces
22     a report and then both sides have a chance to challenge the
23     facts in the report, and then I make that determination on
24     the -- at the sentencing hearing as to what the guideline
25     range is.  And the one that I calculate is the one that I will

Plea Hearing - August 6, 2019

1   consider along with several other factors in determining what

2   the sentence is, even if it's different than the one in the

3   plea agreement.

4           Do you understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  All right.  There is also some appeal

7   waiver language in the plea agreement.  Normally you would

8   have the right to appeal your conviction even though it's

9   entered by a guilty plea.  But in this plea agreement you are

10  giving up your right to appeal your conviction, but you are

11  retaining your right to appeal any sentencing issues that you

12  raise on a timely basis.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  All right.  Now, have you had a chance

16  to discuss this plea agreement with Mr. Fishman to your

17  satisfaction?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you need any additional time to review

20  it with him?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  All right.  Has anyone made any other or

23  different promise or assurance to you of any kind in an effort

24  to persuade you to plead guilty?

25          THE DEFENDANT:  No.

Plea Hearing - August 6, 2019

1    THE COURT:  Has anyone told you that I would sentence

2  you to probation or any specific sentence in exchange for your

3  guilty plea?

4    THE DEFENDANT:  No.

5    THE COURT:  Have you been told that I would treat you

6  more leniently or give you a shorter sentence if you gave up

7  your right to trial and pleaded guilty instead?

8    THE DEFENDANT:  No.

9    THE COURT:  Has anyone tried to force you to plead

10  guilty by any threats or duress or any pressure brought to

11  bear against you in any way?

12    THE DEFENDANT:  No, your Honor.

13    THE COURT:  Are you pleading guilty freely and

14  voluntarily because, first, it's your own choice to plead

15  guilty; and secondly, you, in fact, are guilty?

16    THE DEFENDANT:  Yes, your Honor.

17    THE COURT:  Do you understand that you have the right

18  to plead not guilty to the charge in the information?

19    THE DEFENDANT:  Yes.

20    THE COURT:  If you were to plead not guilty you would

21  have the protection of several constitutional rights, and I'll

22  explain those in a moment.

23    Do you understand, though, that by pleading guilty

24  you are waiving those rights?

25    THE DEFENDANT:  Yes.

Plea Hearing - August 6, 2019

1    THE COURT:  I'm going to explain those rights to you

2  that you have and when I'm finished I'm going to ask if it's

3  your desire to waive them.

4    First, you have the right to plead not guilty.

5    Secondly, you have the right to a speedy and a public

6  trial by a jury.

7    You know what a jury is; correct?

8    THE DEFENDANT:  Yes.

9    THE COURT:  Third, you have the right to be presumed

10 innocent unless and until the Government proves your guilt

11 beyond a reasonable doubt to the satisfaction of all twelve

12 members of the jury.

13    Fourth, you have the right to see and hear all of the

14 witnesses who would be called to testify against you, and you

15 have the right to have your attorney cross examine those

16 witnesses.

17    Fifth, you have the right to have the Court order any

18 witness that you might have for your defense appear at trial

19 at Government expense.

20    Sixth, you have the right to testify at a trial if

21 you want to, but no one can make you testify if you don't

22 want to, because you have the right to remain silent, even

23 throughout the entire trial.  And if you choose to remain

24 silent, your silence cannot be used against you in any way.

25    Do you understand all of those rights, Mr. Vespa?

Plea Hearing - August 6, 2019

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Is it your desire to waive them?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Do you understand that if you plead
 5    guilty and I accept your plea you will be found guilty without
 6    a trial of any kind and you will have given up all the rights
 7    I just explained to you?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  Do you understand that the offense to
10    which you're pleading guilty is a felony?
11              THE DEFENDANT:  Yes.
12              THE COURT:  A felony conviction will result or can
13    result in the loss of valuable civil rights, such as the right
14    to vote, the right to serve on a jury, the right to hold
15    public office, and the right to possess a firearm.
16              Do you understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  It could also have an impact on your
19    ability to hold professional licenses as well.  Have you
20    been -- you are aware of that?
21              THE DEFENDANT:  Yes.
22              THE COURT:  The maximum penalty for this offense, as
23    the Government suggested, is up to 20 years in prison and a
24    maximum fine of up to $250,000.
25              You're aware; correct?
```

Plea Hearing - August 6, 2019

```
1                    THE DEFENDANT:  Yes.

2                    THE COURT:  Also, have you discussed what supervised

3       release means?  Have you discussed that with Mr. Fishman?

4                    THE DEFENDANT:  Yes.  I think we have talked about

5       that, yes.

6                    THE COURT:  All right.  Supervised release is like a

7       period of parole.  You're under the supervision of the Court,

8       and you could be placed on supervised release for up to three

9       years after any custody sentence.  And if you violate any of

10      the conditions of supervision I could sentence you to

11      additional time in prison.

12                   Do you understand that?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  You will have to pay a special assessment

15      at or before the time of sentencing in the amount of $100.

16                   Do you understand that?

17                   THE DEFENDANT:  Yes.

18                   THE COURT:  Also, there is a provision in the plea

19      agreement, but also under law, that I will order you to pay

20      restitution in an amount that I determine after the parties

21      submit the information and I make a decision as to how much is

22      appropriate.

23                   Do you understand that?

24                   THE DEFENDANT:  Yes.

25                   THE COURT:  Also, the plea agreement contains a
```

1    provision regarding forfeiture.  There will be a preliminary

2    order of forfeiture, and I believe it addresses forfeiture of

3    assets that exist and also a money judgment that could enter

4    in a specific amount once that is determined, and that could

5    be also part of the sentence.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you on probation or parole in any

9    other court right now?

10             THE DEFENDANT:  No.

11             THE COURT:  Do you understand that if you were not

12   a citizen of the United States that your conviction resulting

13   from this guilty plea could cause you to be deported, it could

14   affect your ability to return to the country, and it could

15   prevent you from becoming a U.S. citizen?

16             Do you understand all of that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand all of the consequences,

19   then, of your guilty plea?

20             THE DEFENDANT:  Yes.

21             THE COURT:  I'm going to explain to you the essential

22   elements of the offense; that is, what the Government is

23   required to prove beyond a reasonable doubt at a trial.  I do

24   this so that you understand what the Government is required to

25   prove, and when I'm finished with this explanation I'll ask if

Plea Hearing - August 6, 2019

1    you believe the Government could prove these things beyond a

2    reasonable doubt if you chose to go to trial.

3            So you're charged with wire fraud.  In order to

4    convict you of that offense the Government must prove that

5    you devised and executed a scheme to defraud; that is, to

6    obtain money or property by means of a false or fraudulent

7    representation that was material.

8            Secondly, that the scheme included a material

9    representation or the concealment of a material fact.

10           And third, that you used or caused the use of a wire

11   communication in interstate commerce to further the scheme.

12           Do you understand those elements?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you have any questions about them?

15           THE DEFENDANT:  No.

16           THE COURT:  Do you believe if you went to trial the

17   Government could prove those elements beyond a reasonable

18   doubt?

19           THE DEFENDANT:  Yes.

20           THE COURT:  How then are you pleading to the charge

21   of wire fraud?

22           THE DEFENDANT:  Guilty.

23           THE COURT:  Are you pleading guilty because you

24   believe you are guilty?

25           THE DEFENDANT:  Yes.

Plea Hearing - August 6, 2019

```
 1              THE COURT:  Would you tell me in your own words what
 2      you did that makes you believe you're guilty?
 3              MR. FISHMAN:  Judge, would it be all right if we
 4      proceeded by question and answer?  It's a little bit
 5      complicated.
 6              THE COURT:  No.  Sit down.
 7              MR. FISHMAN:  Not okay?
 8              THE COURT:  Not okay.
 9              MR. FISHMAN:  Okay.
10              THE COURT:  I think Mr. Vespa is very capable of
11      explaining to me in his own words what he did.
12              THE DEFENDANT:  From July 1st, 2012 through what the
13      Government says is October 30th of 2017 --
14              THE COURT:  Is that your estimate as well?
15              THE DEFENDANT:  Yes.
16              THE COURT:  More or less?
17              THE DEFENDANT:  More or less.
18              THE COURT:  All right.
19              THE DEFENDANT:  I was employed as an independent
20      contractor for Southeast Michigan Accountable Care.  It was an
21      accountable care organization that had a contract with the
22      Government whereby it managed Medicare beneficiaries.  It
23      worked with independent physicians to deliver higher quality
24      care at a lower cost, and if there were savings earned by the
25      organization the Government would bonus those monies back to
```

Plea Hearing - August 6, 2019

1    the organization to be further distributed to the

2    participating doctors and the shareholders of SEMAC.  SEMAC

3    is the acronym for Southeast Michigan Accountable Care.

4         The period in question, in October 13th of 2017 SEMAC

5    received a bonus of approximately $3.9 million from the

6    Centers for Medicare and Medicaid.  That money was received

7    by me in a bank account at PNC Bank in the name of SEMAC,

8    and I proceeded to distribute monies to the participating

9    physicians, vendors of SEMAC, and then I also wire transferred

10   money from the PNC Bank account to a bank account, an

11   investment account in the name of SEMAC at Stefil Nicolaus.

12   At that time I had no board authority or permission to take

13   such action.

14        THE COURT:  Now, where was the account that you also

15   transferred the money to?

16        THE DEFENDANT:  It was at Bank of America.

17        THE COURT:  Yes, but what was the name of the account

18   holder?

19        THE DEFENDANT:  The account holder was Stefil

20   Nicolaus, but it was in the name of SEMAC.

21        THE COURT:  All right.  And Stefil Nicolaus was what?

22   Was that a different organization?

23        THE DEFENDANT:  Yeah.  That was an investment bank

24   that had an investment account.  It's a Wall Street firm

25   similar to a Merrill Lynch or Morgan Stanley.

```
 1                THE COURT:  I see.  And was that an investment
 2    account for the benefit of you?
 3                THE DEFENDANT:  It was in the name of SEMAC.  It was
 4    pledged as collateral for a line of credit for a company that
 5    I owned and operated, called Gordon Lane Partners, and that
 6    was a Michigan limited liability company.
 7                THE COURT:  All right.  And how did you benefit from
 8    that money?
 9                THE DEFENDANT:  I made two investments, one in
10    a residential property in Birmingham, Michigan, that I
11    purchased and then started renovating; and the second was an
12    investment in a company called One Lily Pad.  The idea behind
13    the investment, it was a loan that was collateralized and was
14    going to earn 10 percent on the money invested.
15                THE COURT:  All right.  Is it fair to say, then, that
16    basically you were administering the funds that rightfully
17    belonged to SEMAC being paid by the Government and you were
18    basically skimming those funds for your own benefit and
19    putting it into those -- into that other account?
20                THE DEFENDANT:  Yes.
21                THE COURT:  All right.  And you did not have
22    permission to do that?
23                THE DEFENDANT:  No, your Honor.
24                THE COURT:  All right.  Where were you located when
25    you did this?
```

1      THE DEFENDANT:  My office was originally in Dearborn,

2    Michigan, and then I moved it to Birmingham, Michigan.

3      THE COURT:  Did the money transfer go by means of

4    wire transfers?

5      THE DEFENDANT:  Yes, it did.

6      THE COURT:  All right.  And did you make any

7    representations to your -- well, I guess not your employer,

8    but to the -- to your contracting counterpart about the

9    transfers of those funds?

10     THE DEFENDANT:  When you say contracting counterpart,

11   your Honor, can you clarify that, please?

12     THE COURT:  SEMAC.

13     THE DEFENDANT:  SEMAC, I did not.

14     THE COURT:  The elements of the crime suggest that

15   you engaged in a scheme to defraud by making material

16   misrepresentations.

17     Did you make a misrepresentation to anyone with

18   respect to your entitlement to the funds?

19     MR. FISHMAN:  May we have a second?

20     THE COURT:  Of course.

21   (Discussion held off the record at 4:32 p.m.)

22     MS. REYNOLDS:  Your Honor, may I place something on

23   the record just briefly?

24     THE COURT:  Let's wait until they are done with their

25   conversation.

Plea Hearing - August 6, 2019

```
 1            MS. REYNOLDS:  Thank you.
 2       (Discussion held off the record at 4:32 p.m.)
 3            THE COURT:  One moment, Mr. Vespa.
 4            Ms. Reynolds, did you have something?
 5            MS. REYNOLDS:  Yes.  I just wanted to point out that
 6    the second element of the offense was -- included not just the
 7    material misrepresentations that would be proactively made,
 8    but also the concealment of a material fact, which is what I
 9    believe he said that he did.
10            THE COURT:  That would be the alternate means.
11            MS. REYNOLDS:  Yes.  Yes.  Among other things, but
12    that is consistent with what he said.
13            MR. FISHMAN:  I can say to the Court, that was
14    exactly the conversation we had.  I'm pretty familiar with
15    the facts.  It was the failure to tell people things, more so
16    than telling them lies.
17            THE COURT:  All right.  So you were taking the money
18    and weren't telling people that you were taking it; is that
19    correct?
20            THE DEFENDANT:  Yes.
21            THE COURT:  And if you had told people that you were
22    taking the money, there would be repercussions, would you
23    believe?
24            THE DEFENDANT:  Yes.
25            THE COURT:  In other words, you would be accused of
```

Plea Hearing - August 6, 2019

1    being a thief; right?

2                THE DEFENDANT:  Yes.

3                THE COURT:  All right.  Are you satisfied with the

4    factual basis?

5                MS. REYNOLDS:  If I could add two things, your Honor.

6                THE COURT:  Yes.

7                MS. REYNOLDS:  The Defendant has indicated a date, a

8    range of dates for this activity that included the entire time

9    that he was employed as an independent contractor.  I would

10   just like to point out the fact that at least the information

11   itself refers to a different set of dates of January 6, 2015

12   through October 30, 2017, which is the heart of the scheme to

13   defraud.

14              I have no problem with the -- there may have been

15   conduct that happened in the larger time frame that he

16   referenced, but the Government's time frame is a little bit

17   different.

18              THE COURT:  Well, you're aware that the time frame he

19   mentioned is the time frame that's reflected in the factual

20   basis of the plea agreement?

21              MS. REYNOLDS:  Yes.  We changed the factual basis

22   because he wanted to do that, but I wanted the Court to

23   understand the inconsistency between the Rule 11 Agreement and

24   the information.

25              THE COURT:  I don't know that there is an

1    inconsistency, in that his recitation was broader than the

2    time frame in the information, so it encompassed it.

3             MS. REYNOLDS:  Correct.  That's correct.  I just

4    wanted to point that out.

5             The other thing is, if we went to trial, your Honor,

6    and I think the Defendant would stipulate to this, we would be

7    referencing a wire communication which was a transfer of funds

8    of $2 million from PNC Bank in Birmingham, Michigan to the

9    Bank of America in New York, New York that was facilitated by

10   the Defendant.

11            THE COURT:  Do you agree?

12            THE DEFENDANT:  Yes.

13            THE COURT:  All right.

14            MS. REYNOLDS:  Thank you, your Honor.  Other than

15   that.

16            THE COURT:  Do you have -- are you satisfied with the

17   factual basis?

18            MS. REYNOLDS:  I am, your Honor.  Thank you.

19            THE COURT:  Mr. Fishman?

20            MR. FISHMAN:  I just wanted to clarify, what the

21   Court said is accurate.  The reason that we changed that date,

22   Mr. Vespa and I both thought that the first sentence in the

23   factual basis referred to how long he had that relationship,

24   and the relationship began back in 2012.  There wasn't any

25   funny business going on back then.  The dates that Mr. Vespa

1    has recited to you are the dates of the criminal activity.  We

2    just wanted it to be accurate so the Court would see that's

3    how long he was associated with them.  We weren't saying that

4    he was doing anything wrong then.

5            THE COURT:  Well, let's make the record clear.

6            MR. FISHMAN:  Okay.

7            THE COURT:  As I understood, Mr. Vespa said to me

8    that he was involved in the criminal activity from July 1 of

9    2012 to October -- or the Government says October 30, 2017,

10   and he said more or less.

11           That's not what he meant to say?

12           MR. FISHMAN:  Right.

13           THE COURT:  He meant to say he was employed with

14   that -- he was under contract with that organization?

15           MR. FISHMAN:  Precisely.

16           THE COURT:  All right.  Now, do you agree, Mr. Vespa,

17   that the criminal activity to which you're admitting took

18   place sometime between January of 2015 and the end of October

19   of 2017?

20           THE DEFENDANT:  I actually believe that the criminal

21   activity occurred in October -- in the month of October '17.

22   That's when it occurred.

23           THE COURT:  Is that when the $2 million was

24   transferred?

25           THE DEFENDANT:  Yes.

Plea Hearing - August 6, 2019

31

1           THE COURT:  All right.

2           THE DEFENDANT:  That's the period of time.

3           THE COURT:  Are you still satisfied with the factual

4    basis?

5           MS. REYNOLDS:  I'm satisfied with the factual basis,

6    and I think that the question that you just asked the

7    Defendant will be discussed in both the sentencing memos and

8    the sentencing hearing, as far as how long the criminal

9    activity took place.

10          THE COURT:  Oh, I see.  All right.

11          Mr. Fishman, once again, are you satisfied with the

12   factual basis?

13          MR. FISHMAN:  I'm satisfied.

14          THE COURT:  All right.  After hearing a recitation of

15   your rights, Mr. Vespa, and being advised about the penalties

16   that can be imposed is it still your intention to plead guilty?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And do you still want me to accept your

19   plea?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Counsel, has the Court complied with all

22   of the applicable provisions of Rule 11 of the Federal Rules

23   of Criminal Procedure?

24          MS. REYNOLDS:  You have, your Honor.  Thank you.

25          MR. FISHMAN:  Yes, sir.

Plea Hearing - August 6, 2019

1          THE COURT:  Thank you.  It is the finding of the

2    Court in the case of the United States of America versus

3    Anthony Vespa -- his middle name is not included on the

4    charging document -- that the Defendant is fully competent and

5    capable of entering an informed plea.  The Defendant's plea of

6    guilty is a knowing and voluntary plea.  The Defendant's plea

7    is supported by his own statement of facts which contains all

8    of the essential elements of the offense.

9          I'll accept the plea.  I adjudge the Defendant guilty

10   of the crime charged in the information.  I'll take the Rule

11   11 Agreement under advisement.

12         Mr. Vespa, I'm referring this case to the Probation

13   Department, as is typical, for a presentence investigation and

14   report.  The Probation Department will gather information from

15   a variety of sources to prepare that report and one source

16   will be from you.  You will be interviewed by the Probation

17   officer and Mr. Fishman will be present with you at that

18   interview.

19         After the report is prepared Mr. Fishman will have

20   a copy and review it with you.  You will have a limited period

21   of time to object to the report if you believe it contains

22   erroneous information or even perhaps if it might omit

23   information you think should be included.

24         The objections many times are resolved with the

25   Probation officer, but if they are not I'll rule on them at

Plea Hearing - August 6, 2019

33

 1   the sentence hearing.

 2              At the sentence hearing both you and your attorney

 3   will have a chance to personally address me in open court

 4   before I pronounce your sentence.

 5              The sentence in this case will take place on

 6   November 6 at 9:00 in the morning.

 7              You look surprised, Mr. Fishman.  Did you --

 8              MR. FISHMAN:  Yeah.  I thought it was the 20th.

 9              THE COURT:  My note here says November 6th.  Did you

10   talk to Ms. Pinkowski about that?

11              MR. FISHMAN:  I defer to the assistant case manager.

12              THE CLERK:  They did not confer with Ms. Pinkowski.

13   She is aware that that's a troublesome date with Mr. Fishman

14   and she's going to work it out.

15              THE COURT:  I'm going to set it for November 6th at

16   9:00 a.m., understanding that if that's a problem that both of

17   you can contact my case manager and we can make adjustments.

18              Is that acceptable with you, Mr. Fishman?

19              MR. FISHMAN:  That's fine.

20              THE COURT:  All right.

21              MS. REYNOLDS:  Thank you, your Honor.

22              THE COURT:  Do you have any questions, Mr. Vespa?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  Anything further from the Government

25   today?

Plea Hearing - August 6, 2019

```
 1              MS. REYNOLDS:  No, your Honor.  Thank you.

 2              THE COURT:  From the Defendant?

 3              MR. FISHMAN:  Nothing from us.

 4              THE COURT:  All right.  Thank you, Counsel.

 5         You may recess court.

 6              MR. FISHMAN:  Thank you.

 7              MS. REYNOLDS:  Appreciate it.  Thank you.

 8              THE CLERK:   All rise.  Court is now in recess.

 9                  (Proceedings adjourned at 4:39 p.m.)

10                      *       *       *

11

12

13                  CERTIFICATE OF COURT REPORTER

14

15         I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17

18    _____     August 28, 2019
             s/ Rene L. Twedt
      RENE L. TWEDT, CSR-2907, RDR, CRR, CRC        Date
19         Federal Official Court Reporter

20

21

22

23

24

25
```